Stephen M. Feldman, OSB No. 932674
SFeldman@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **FAROUK AL-HADI**, an individual; **DAVID ELLIS**, an individual; and **PAMELA ELLIS**, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> **AIG SPECIALTY INSURANCE COMPANY**, as successor-in-interest to CHARTIS SPECIALTY INSURANCE COMPANY, an Illinois corporation, <br><br> Defendant. | No. 3:18-cv-1002 <br><br> **COMPLAINT** <br> (Breach of Contract) <br><br> **DEMAND FOR JURY TRIAL** |

1-   COMPLAINT

112384-0005/140142115.1

Plaintiffs Farouk Al-Hadi, David Ellis, and Pamela Ellis (collectively, "Plaintiffs") as and for their Complaint against Defendant AIG Specialty Insurance Company, formerly known as and the successor-in-interest to Chartis Specialty Insurance Company, allege as follows:

## INTRODUCTION

1.      This is an insurance coverage action based on an insurance company's unjustified refusal to cover environmental liabilities under a policy of insurance that was specifically designed to cover environmental liabilities.

## THE PARTIES

2.      Plaintiff Farouk Al-Hadi is an individual who resides in Clackamas County, Oregon.

3.      Plaintiff David Ellis is an individual who resides in Clackamas County, Oregon.

4.      Plaintiff Pamela Ellis is an individual who resides in Clackamas County, Oregon.

5.      On information and belief, Defendant AIG Specialty Insurance Company was formerly known as and is the successor-in-interest to Chartis Specialty Insurance Company.  On further information and belief, AIG Specialty Insurance Company is a corporation duly organized and existing under the laws of the State of Illinois, with a principal place of business in New York, New York.  On further information and belief, Chartis Specialty Insurance Company was, at all times material to this dispute, a corporation duly organized and existing under the laws of the State of Illinois, with a principal place of business in New York, New York.  At all times material to this dispute, Chartis Specialty Insurance Company was engaged in the business of selling insurance, and it sold policies covering risks located in the State of Oregon. Throughout the remainder of this Complaint, AIG Specialty Insurance Company, in its capacity as the successor-in-interest to Chartis Specialty Insurance Company, will be referred to as either "AIG" or "Defendant."

2-   COMPLAINT

112384-0005/140142115.1

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

## JURISDICTION AND VENUE

6.      The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs, and complete diversity of citizenship exists between the Plaintiffs and the Defendant.  This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332.

7.      This Court has personal jurisdiction over the parties as each has transacted business that gives rise to this action in Oregon.

8.      Venue is appropriate in the United States District Court for the District of Oregon by virtue of 28 U.S.C. § 1391 as a substantial part of the events giving rise to this action occurred within the District of Oregon.

## GENERAL ALLEGATIONS

**A.      The Underlying Environmental Liability**

9.      Plaintiffs were the former owners of the property and buildings located at 140 Queen Avenue SW, Albany, Oregon (the "Queen Avenue Site").

10.      On or about May 5, 2006, Plaintiffs and a company named Absorbent Technologies, Inc. ("ATI") entered into a lease agreement (the "Lease"), whereby Plaintiffs leased the Queen Avenue Site to ATI for a term of two hundred forty (240) months.

11.      Pursuant to the Lease, ATI took possession of the Queen Avenue Site and used the Queen Avenue Site for its business operations, which included researching, developing, and manufacturing an agricultural product known as "Zeba."

12.      "Zeba" was a soil additive and fertilizer product designed to improve crop irrigation.  The manufacturing process has been simplistically described as the dehydration of starch powder in a reaction that uses acrylonitrile.  The Queen Avenue Site was used for, *inter alia*, the development and manufacture of Zeba.  As part of its ordinary business activity, ATI stored and used regulated chemical products that are considered hazardous substances.

3-   COMPLAINT

112384-0005/140142115.1

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

13.     On or about March 8, 2013, ATI filed a Chapter 11 bankruptcy proceeding in the U.S. Bankruptcy Court for the District of Oregon, Case No. 13-31286-tmb7 ("Bankruptcy Proceeding"), for the purpose of reorganizing its debts.

14.     On or about October 11, 2013, ATI ceased operations and shuttered the Queen Avenue Site.  When ATI vacated the Queen Avenue Site, it improperly left acrylonitrile and other chemical products "as is" in their respective storage tanks, equipment, or other containers (collectively, the "Chemical Products").  On or about October 23, 2013, shortly after vacating the Queen Avenue Site, ATI converted its Bankruptcy Proceeding to Chapter 7 for the purpose of liquidation.

15.     Although none of the Chemical Products at the Queen Avenue Site had leaked, spilled, or otherwise escaped their intended containment at the time of ATI's abandonment of the Queen Avenue Site, and although all such products remained within their respective storage tanks, equipment, or other containers, the Chemical Products, because they had been left unattended, created a threat of both bodily injury and property damage to the surrounding neighborhoods.  For example, acrylonitrile, which is a highly toxic hazardous substance, becomes highly unstable if not properly maintained and, as a result, ATI's abandonment of the Queen Avenue Site, including tanks filled with acrylonitrile, created a substantial risk of a large-scale toxic chemical explosion.

16.     On or about October 15, 2013, the U.S. Environmental Protection Agency ("EPA") became aware of the Chemical Products left at the Queen Avenue Site, and because of the substantial dangers posed by the abandonment of the Chemical Products, EPA took over control of the Queen Avenue Site pursuant to its regulatory authority under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA), 42 U.S.C § 9601 *et seq.* EPA identified Plaintiffs as Potentially Responsible Parties ("PRPs") under CERCLA due to their status as the then-owners of the Queen Avenue Site.  (EPA also identified ATI as a PRP,

4-    COMPLAINT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

but ATI was effectively immunized from any potential financial liability because of its bankruptcy.)  Attached as **Exhibit 1** is a true and correct copy of an EPA Action Memorandum dated November 6, 2013, detailing events related to the Queen Avenue Site during this time period.  Also attached as **Exhibit 2** is a true and correct copy of a Declaration of Daniel Heister, who was the EPA On-Scene Coordinator for the Queen Avenue Site.  Among other things, Mr. Heister testifies in his Declaration that "on Friday, October 11, 2013, ATI ceased operation and shuttered [the Queen Avenue Site], leaving an acrylonitrile storage tank and other chemicals at the Site without supervision and/or properly maintained fire suppression and vapor detectors."

17.    Because of ATI's abandonment of the Queen Avenue Site and the substantial dangers posed by the unsupervised Chemical Products, EPA required the removal and disposal of the Chemical Products then still stored at the Queen Avenue Site.  EPA itself undertook emergency efforts to remove and dispose of the most dangerous of the Chemical Products (i.e., the acrylonitrile), and EPA informed Plaintiffs that unless they undertook prompt efforts to remove and dispose of the remainder of the Chemical Products, EPA would do so and would, in turn, require Plaintiffs, as PRPs, to pay for the costs incurred by EPA and its subcontractors. EPA further informed Plaintiffs that it would be considerably less expensive for Plaintiffs to undertake the necessary removal and disposal of the remaining Chemical Products than for Plaintiffs to pay EPA to do so.

18.    On or about October 22, 2013, and in accordance with EPA's directive, Plaintiffs entered into an agreement with an environmental contractor for the purpose of carrying out the removal and disposal of the remaining Chemical Products at the Queen Avenue Site.  In late December 2013, Plaintiffs were informed by the environmental contractor that the removal and disposal work had been completed and Plaintiffs, in turn, paid the environmental contractor hundreds of thousands of dollars for performing such work.  Plaintiffs also paid a substantial amount to EPA for the additional response actions that EPA itself (and/or EPA's subcontractors)

5-    COMPLAINT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

undertook at the Queen Avenue Site, including the removal and disposal of acrylonitrile as well as EPA's oversight of the response actions being undertaken by the environmental contractor hired by Plaintiffs.  In addition, Plaintiffs incurred other expenses associated with the required response actions at the Queen Avenue Site, such as waste disposal fees.

19.    In or about February 2014, following notification that all of the Chemical Products had been properly removed and disposed of, Plaintiffs undertook efforts to disassemble the maze of pipes and tanks and other equipment that ATI had abandoned at the Queen Avenue Site.  During the disassembly, certain Chemical Products were discharged when a portion of the piping was cut into.  As a result, EPA returned to the Queen Avenue Site and subsequently confirmed that the prior response actions had not been sufficiently thorough and that Chemical Products remained in the storage tanks, equipment, or other containers at the Queen Avenue Site. On or about February 25, 2014, EPA issued a Unilateral Administrative Order for Removal Action ("UAO") naming Plaintiffs herein as the "Respondents," and requiring the complete removal and disposal of any such remaining Chemical Products.  Attached as **Exhibit 3** is a true and correct copy of the UAO, including its Amendment No. 1.

20.    Pursuant to the UAO, a subsequent removal and disposal effort was undertaken at the Queen Avenue Site.  As a result of this subsequent removal and disposal effort, Plaintiffs incurred hundreds of thousands of dollars of additional expense, including, *inter alia*, payment to an environmental contractor hired by Plaintiffs as well as payment to EPA.

21.    Beyond the expenses described above for work related to the removal and disposal of the Chemical Products at the Queen Avenue Site, Plaintiffs additionally have incurred hundreds of thousands of dollars in attorneys' fees and other legal expenses as a result of ATI's abandonment of the Queen Avenue Site.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**B.     The Cost Recovery Lawsuit**

22.     On October 14, 2015, Plaintiffs filed a lawsuit in Multnomah County Circuit Court against two former executive officers of ATI -- namely, Milan Savich ("Savich") and David Moffenbeier ("Moffenbeier") -- seeking to recover the costs incurred by Plaintiffs as a result of ATI's abandonment of the Queen Avenue Site.  That lawsuit was styled as *Farouk Al-Hadi, et al. v. Milan Savich*, *et al.*, Circuit Court for the State of Oregon (Multnomah County), Case No. 15CV27976 (the "Cost Recovery Lawsuit").

23.     In the Cost Recovery Lawsuit, Plaintiffs alleged, *inter alia*, that Savich and Moffenbeier, in their respective capacities as officers of ATI, were liable to Plaintiffs because of the negligent manner in which they chose to cease ATI's operations, including the abandonment of the Queen Avenue Site.  More specifically, Plaintiffs alleged in the Cost Recovery Lawsuit that the failure to plan for the proper removal and disposal of the Chemical Products prior to ATI's abandonment of the Queen Avenue Site was, *inter alia*, a negligent act or omission on the part of Savich and Moffenbeier.

24.     During the pendency of the Cost Recovery Lawsuit, Moffenbeier filed for bankruptcy and, as a consequence, he was dismissed from the Cost Recovery Lawsuit.

25.      Plaintiffs and Savich ultimately resolved the Cost Recovery Lawsuit. Specifically, in accordance with the terms of a settlement reached by the parties, Plaintiffs and Savich stipulated to the entry of a judgment against Savich.  Attached as **Exhibit 4** is a true and correct copy of the Stipulated General Judgment and Money Award (the "Judgment") entered in the Cost Recovery Lawsuit.

26.     Pursuant to the Judgment, Savich is legally obligated to pay Plaintiffs the principal amount of $943,869, plus prejudgment interest in the amount of $212,330, as well as costs and disbursements in the amount of $531 and a prevailing party fee of $300.  Thus, in total, the amount of the judgment entered against Savich is $1,157,030.  Additionally, in accordance with ORS 82.010(2), all of the foregoing amounts have been accruing, and will continue to

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

accrue, interest at the rate of 9% per annum from the date on which the Judgment was entered

(i.e., June 2, 2017).  According to Plaintiffs' calculation, the monthly post-judgment interest

amounts to slightly more than $8,677, meaning that the post-judgment interest thus far accrued is

slightly more than $104,124 (i.e., $8,677 x 12 months).  Thus, at present, the total amount owed

to Plaintiffs by Savich is at least $1,261,154 (i.e., $1,157,030 + $104,124).

27.     As an additional component of the resolution of the Cost Recovery Lawsuit,

Plaintiffs and Savich entered into an Assignment of Claims and Limited Covenant Not to

Execute (the "Assignment"), a true and correct copy of which is attached as **Exhibit 5**.  Pursuant

to the Assignment, Savich assigned to Plaintiffs all of his liability insurance rights, interests,

claims, and causes of action that arise out of or relate to the Cost Recovery Lawsuit.  In exchange

for this assignment, Plaintiffs covenanted not to enforce or execute on the Judgment against

Savich, except to the extent of the assigned liability insurance rights, interests, claims, and causes

of action.

**C.      The AIG Policy, the Tender of the Underlying Environmental Liability to AIG, and AIG's Denial of Coverage**

28.     AIG issued a multi-part insurance policy to ATI bearing policy number EG

1942111 (the "Policy").  Attached as **Exhibit 6** is a copy of what Plaintiffs understand to be the

complete Policy, including its various endorsements.  The Policy includes a commercial general

liability ("CGL") coverage section, as well as, among other things, a separate pollution legal

liability ("PLL") coverage section.  On information and belief, the Policy was in effect from

July 1, 2012 until at least October 31, 2013, and the Policy includes a limit of $1,000,000 for

each loss under the PLL coverage section and an aggregate limit of $2,000,000.

29.     The Named Insured under the Policy is ATI, but the Policy also includes various

others as insureds, including, *inter alia*, any past or present officer of ATI, such as Savich.

Moreover, pursuant to the Lease, ATI was required to name Plaintiffs as additional insureds

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

under the Policy and, on information and belief, Plaintiffs qualify as insureds under the Policy. But, in any event, pursuant to the Assignment, Plaintiffs now possess Savich's rights, interests, claims, and causes of action under the Policy.

30.     The Policy expressly identifies the Queen Avenue Site as an "insured property."

31.     As of mid- to late October 2013, AIG was put on notice of (i) EPA having undertaken control of the Queen Avenue Site, (ii) EPA's emergency removal and disposal of the most dangerous Chemical Products that had been abandoned at the Queen Avenue Site (as well as the fact that EPA was seeking to hold Plaintiffs liable for the costs incurred by EPA), and (iii) EPA's directive that Plaintiffs remove and dispose of all Chemical Products that remained at the Queen Avenue Site.  Coverage for all of the expenses associated with the EPA-directed removal and disposal of Chemical Products was sought under the Policy.  But despite the fact that the Policy, including, in particular, its PLL coverage section, was designed to cover such environmental liabilities, AIG refused to provide any coverage.  The losses incurred in connection with the EPA-directed removal and disposal of the Chemical Products from the Queen Avenue Site were re-tendered to AIG on numerous occasions, but each time, AIG flatly refused to provide coverage.

32.     The PLL coverage section of the Policy generally provides coverage for, *inter alia*, any loss that an insured becomes legally obligated to pay as a result of "pollution conditions" on an insured property.  The Policy defines the term "pollution conditions" to mean "the discharge, dispersal, release or escape of **pollutants** into or upon land, or any structure on land, the atmosphere or any watercourse or body of water, including groundwater, provided such conditions are not naturally present in the environment in the amounts or concentrations discovered."  (Emphasis in original.)  The Policy defines "pollutants" to include chemicals and, accordingly, the abandoned Chemical Products at the Queen Avenue Site satisfy that definition. Furthermore, as indicated above, the Queen Avenue Site is an "insured property" under the

9-   COMPLAINT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Policy.  Thus, the key question concerning coverage under this portion of the Policy is whether the abandoned Chemical Products at the Queen Avenue Site constituted "pollution conditions" within the meaning of the Policy.  Indeed, AIG denied coverage for the losses incurred in connection with the EPA-directed removal and disposal of the Chemical Products based on its contention that there were no "pollution conditions" and, as such, coverage under the PLL coverage section of the Policy was not triggered.

33.    Contrary to AIG's position, the abandoned Chemical Products at the Queen Avenue Site constituted "pollution conditions" within the meaning of the Policy.  This is evident from the fact that the PLL coverage section of the Policy was specifically designed to cover, *inter alia*, environmental claims brought by EPA under CERCLA, and CERCLA, in turn, specifically defines the term "release" as follows: "The term 'release' means any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment (*including the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous substance or pollutant or contaminant*), . . . ." 42 U.S.C § 9601(22) (emphasis added).  Moreover, reading the undefined term "release" in the PLL coverage section of the Policy consistent with that term's definition in CERCLA is further supported by the fact that the definition of "pollution conditions" in the Policy speaks of a release of pollutants into or upon not only land, water and the atmosphere, but also into or upon "any structure on land" (e.g., a tank or other closed receptacle).  Additionally, AIG's narrow reading of the undefined term "release" in the PLL coverage section of the Policy is also inconsistent with Oregon law in a variety of ways, including (i) that AIG's proffered interpretation would render the term "release" synonymous with one or more other terms in the definition of "pollution conditions" (e.g., discharge, dispersal, or escape), thereby impermissibly making the term "release" mere surplusage, (ii) that

10-  COMPLAINT

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

the insurer has the burden of drafting insurance policies that are clear and unambiguous, and

(iii) that any doubts regarding coverage are resolved in favor of the insured.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

34.     Plaintiffs incorporate by reference, as if fully set forth herein, the allegations

contained in each of the preceding paragraphs.

35.     AIG breached the Policy by refusing to provide coverage for the losses incurred

in connection with the EPA-directed removal and disposal of the Chemical Products abandoned

at the Queen Avenue Site.

36.     All conditions precedent to AIG's coverage obligations under the Policy have

been fully performed, complied with, and/or satisfied, excepting any such conditions that were

waived or excused, or as to which performance was prevented by AIG.

37.     As a direct and proximate result of AIG's breach of the Policy, Plaintiffs have

been damaged in the amount of at least $1,261,154, together with prejudgment interest at the

maximum statutory rate.

38.     Further, because of AIG's breach of the Policy, Plaintiffs have been required to

incur attorneys' fees to protect their interests.  Pursuant to ORS 742.061, Plaintiffs are entitled to

recover their attorneys' fees incurred in this action, as well as the attorneys' fees incurred in

pursuing Plaintiffs' rights under the Policy prior to the filing of this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1.     For judgment against AIG for damages in the amount of at least $1,261,154;

2.     For an award of prejudgment interest at the maximum rate allowed by law;

3.     For an award of all attorneys' fees incurred in this action, as well as incurred in

otherwise pursuing Plaintiffs' rights under the Policy issued by AIG;

11-  COMPLAINT

112384-0005/140142115.1

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

4.      For an award of all costs and disbursements incurred in connection with this

action;

5.      For an award of post-judgment interest at the maximum rate allowed by law; and

6.      For such other relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs respectfully demand a trial by jury on all claims and issues so triable.

DATED:  June 6, 2018                    **PERKINS COIE LLP**

By: *s/ Stephen M. Feldman*
    Stephen M. Feldman, OSB No. 932674
    SFeldman@perkinscoie.com
    1120 N.W. Couch Street, 10th Floor
    Portland, OR  97209-4128
    Telephone:  503.727.2000
    Facsimile:  503.727.2222

Attorneys for Plaintiffs

12-  COMPLAINT